UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SUNDA YOUNGER,

    Plaintiff,

v.                                                    Case No. 3:21-cv-457-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her application for supplemental security income ("SSI"). Following an administrative hearing held on September 28, 2020, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled since May 17, 2019, the date the application was filed.[2] (Tr. 27.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

    **I.**    **Standard of Review**

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 26.)

[2] The earliest time that SSI benefits are payable is the month following the month in which the application was filed. *See* 20 C.F.R. § 416.335. Plaintiff's SSI application was filed on May 17, 2019. (Tr. 27.)

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

### A.   Issues on Appeal

Plaintiff's issues on appeal involve the ALJ's determination of her

residual functional capacity ("RFC"). (Doc. 31 at 6-13.) Plaintiff argues that "[t]he RFC is unsupported by substantial evidence because the ALJ failed to develop the record by obtaining an opinion from a treating source." (*Id*.) Plaintiff explains:

> However, the record in this case contained only the opinions of state agency medical consultants, whom the ALJ found "somewhat persuasive," and one consultative examiner, to which the ALJ did not assign any persuasive value. Therefore, the ALJ should have obtained a medical source statement from a treating source. Alternatively, the ALJ should have recontacted consultative examiner Dr. Leon [sic] for clarification on his admittedly vague opinion.
> . . .
>
> By assigning the only opinions of record no [sic] to only "somewhat" persuasive value, it was unclear how the ultimate RFC was formed. "The ALJ may not 'play doctor' by substituting her own uninformed medical evaluations" for that of a medical professional." Here, the ALJ limited Younger to avoiding concentrated exposure to pulmonary irritants based on her atrial fibrillation and chronic obstructive pulmonary disease, but it is unclear whether this limitation was sufficient, as no medical opinion of record opined limitations [to] this issue. While the ALJ's RFC determination need not mirror any singular medical opinion, it also may not be based on the ALJ's lay interpretation of the medical data. This is error.

(*Id*. at 7,8 (internal citation omitted).)

As to Plaintiff's argument regarding the ALJ's RFC determination, Defendant responds that:

> To the extent Plaintiff suggests an ALJ must rely on a medical opinion to determine the RFC, this claim is meritless. At the hearing level, the ALJ has the responsibility of assessing Plaintiff's RFC. An ALJ is not assuming the role of a doctor by

3

> determining the RFC, because it is an administrative assessment, not a medical one, that is the ALJ's responsibility. Eleventh Circuit and district court decisions confirm that an ALJ does not have to base the RFC on a medical opinion.

(Doc. 32 at 8-9 (internal citations omitted).)

As to Plaintiff's argument concerning Dr. de Leon's consultative examination, Defendant responds that Dr. de Leon's consultative examination merely resulted in a report based on Plaintiff's subjective complaints and was not a medical opinion. (Doc. 32 at 11.) Defendant explains:

> In her argument about Dr. Leon's [sic] alleged medical opinion, Plaintiff states that Dr. Leon [sic] found that she could sit for 30 minutes before experiencing back pain, stand for 30 minutes, and walk for 10 minutes. However, these were not assessments made by Dr. Leon [sic]. They were the subjective report of Plaintiff that Dr. Leon [sic] recorded in his report in the "functional status" section, which also included Plaintiff's other subjective reports of being able to cook/meal prep, able to complete personal care, unable to sweep, able to shop and bank, [and] not able to drive. Thus, the notations Plaintiff highlights are not a statement from a medical source about what Plaintiff can still do despite her impairments, nor is it a statement in the regulations. It is merely *Plaintiff's report* to Dr. Leon [sic] of what she said she can do. Accordingly, it is not a medical opinion.
>
> Plaintiff contends that Dr. Leon's [sic] statement that "Plaintiff is unable to walk on toes and heels without difficulty, squat fully & get back up unassisted" is a medical opinion that the ALJ was required to evaluate. However, this statement is not a medical opinion for it is merely a list of findings from Dr. Leon's [sic] medical examination of Plaintiff, which amounts to "objective medical evidence." Accordingly, Plaintiff fails to show that Dr. Leon's [sic] report contains a medical opinion that the

4

ALJ was required to evaluate.

(*Id*. at 12-13 (emphasis in original) (internal citations omitted).)

### A.     Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. § 416.920(a)(3).  With regard to medical opinions, the rules in 20 C.F.R. § 416.920c apply to claims filed on or after March 27, 2017.[3]  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised rules and regulations in effect at the time of the ALJ's decision.

Under the revised rules and regulations, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).  The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in the case record, 20 C.F.R. § 416.920c(b), but need not articulate how evidence from non-medical sources has been considered, 20 C.F.R. § 416.920c(d).

"When a medical source provides one or more medical opinions," those

---

[3] The rules in 20 C.F.R. § 416.927 apply to claims filed before March 27, 2017.

5

opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. § 416.920c(c)(1) through (c)(5), as appropriate.  20 C.F.R. § 416.920c(a), (b)(1).  The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually."  20 C.F.R. § 416.920c(b)(1).

When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency.  20 C.F.R. § 416.920c(a), (b)(2).  Thus, the ALJ "will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 416.920c(c).  20 C.F.R. § 416.920c(b)(2).  As explained recently by another court in this District:

> Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  In other words, the ALJ's analysis is directed to whether the medical source's opinion is *supported* by the source's own records and *consistent* with the other evidence of record—familiar concepts within the framework of social security litigation.

*Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) (emphasis in original) (report and recommendation adopted by 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)).

6

When "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ will articulate how he/she considered the other most persuasive factors listed in 20 C.F.R. § 416.920c(c)(3) through (c)(5), which include a medical source's relationship with the claimant,[4] specialization, and other factors.[5]  20 C.F.R. § 416.920c(b)(3).

### B. ALJ's Decision

At step two of the sequential evaluation process,[6] the ALJ found that Plaintiff had the following severe impairments: "hypertension, degenerative disc disease, chronic obstructive pulmonary disease and atrial fibrillation." (Tr. 29.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 29-30.)

---

[4] The relationship with the claimant factor combines consideration of the following issues: the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship.  20 C.F.R. § 416.920c(c)(3)(i)-(v).

[5] The other factors may include: the medical source's familiarity with the other evidence in the claim; the medical source's understanding of the disability program's policies and evidentiary requirements; and the availability of new evidence that may render a previously issued medical opinion more or less persuasive.  20 C.F.R. § 416.920c(c)(5).

[6] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 416.920(a)(4).

7

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work with limitations as follows:

> I specifically find that the claimant can lift 20 pounds occasionally and 10 pounds frequently. The claimant can sit and stand and/or walk, with normal breaks, for [six] hours each in an [eight]-hour workday. The claimant can never climb ropes, ladders[,] or scaffolds. She can frequently climb ramps or stairs. She can frequently stoop or crouch. She must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and unventilated environments. She must avoid concentrated exposure to hazards[,] such as unprotected heights and dangerous moving machinery.

(Tr. 30.) The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons stated in [the] decision." (Tr. 31.)

In making the above RFC determination, the ALJ explained:

> In terms of the claimant's alleged back pain, I have limited her to less than full range of light work with additional postural limitations. However, [X]-rays taken pursuant to a prior consultative examination revealed only mild degenerative spondylosis with subtle ventral slipping at L4 over L5. In the 2016 consultative examination, which was considered in the prior ALJ's decision, the claimant alleges that she was unable to work due to back pain and high blood pressure. However, an examination of the spine revealed normal range of motion and no spinal tenderness. The previous ALJ's decision notes that the claimant presented to the emergency room for treatment of back pain in October of 2017. However, an exam revealed only mild

8

> decreased range of motion and lumbar paraspinal tenderness. There was no alteration of gait and the claimant exhibited full ranges of motion in the lower extremities, no motor deficits and no sensory deficits. Hospital records dated November 7, 2017, note no evidence of tenderness in the back and normal musculoskeletal ranges of motion. The claimant denied symptoms of back pain. Similarly, in January of 2018, the claimant denied symptoms of back pain and an exam revealed no tenderness in the back or musculoskeletal system. Strength and ranges of motion were also noted to be normal. On April 6, 2018, the claimant denied symptoms of back pain or extremity weakness.
> . . .
>
> In terms of the claimant's alleged heart condition and chronic obstructive pulmonary disease with symptoms of shortness of breath, I have limited the claimant's exposure to pulmonary irritants and hazards in addition to the light exertional limitations.

(Tr. 33-34 (internal citations omitted).)

The ALJ also addressed the previous ALJ's decision, the medical evidence of record, including emergency room ("ER") records, the consultative examination findings by Dr. de Leon, and the State agency reviewing doctors' opinions. (Tr. 33-35.) The ALJ noted that the State agency doctors' opinions were "somewhat persuasive" because they were "based on a review of the medical record and supported by a detailed rationale." (*Id.* at 35.) Then, at step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a reception clerk. (Tr. 36.)

### C. Vocational Expert's ("VE") Testimony

During hypothetical questioning by the ALJ, the VE testified as

9

follows:

> Q. Please assume you're dealing with a hypothetical individual the same age as the claimant, with the same educational background and past work experience. Further assume that this individual retains the capability of lifting 20 pounds occasionally, 10 pounds frequently; can stand [six] [out] of [eight] hours; walk [six] [out] of [eight] hours; and sit [six] [out] of [eight] hours; ropes, ladders, and scaffolds would be never; frequent ramps, stairs, stooping, crouching; fumes, odors, dust, gases, unventilated environments avoid concentrated exposure; hazards; this would be unprotected heights and dangerous moving machinery, avoid concentrated exposure. Could such an individual perform any of the claimant's past relevant work as actually performed or as generally performed in the national economy?
>
> A. Your Honor, the only job that could be performed would be the reception clerk, as defined in the DOT as well as how she performed it.

(Tr. 72-73.)

### D. Augusto R. de Leon[7], M.D., Consultative Examiner

On July 27, 2019, Plaintiff presented to Dr. de Leon for a consultative examination. (Tr. 901.) Plaintiff's chief complaint was chronic back pain. (*Id.*) Dr. de Leon listed Plaintiff's functional status as follows:

> **-Sitting**: 30 minutes then her back starts hurting
> **-Standing**: 30 minutes then her legs get tired
> **-Walking**: 10 minutes
> **-Cooking/Meal Prep**: able/able
> **-Personal Case (Bathe/dressing)**: able/able
> **-Housekeeping and laundry**: cannot sweep, cannot lift/unable
> **-Shopping/Banking**: able/able

---

[7] The ALJ, Plaintiff, and Defendant mistakenly refer to Dr. de Leon as "Dr. Leon."

10

    **-Driving**: not able

(*Id.*)  After listing Plaintiff's functional status, Dr. de Leon then listed Plaintiff's current medications, allergies, surgical, family, and social history, and reviewed her symptoms.  (Tr. 901-902.)  Physical examination revealed normal gait and station and normal range of motion throughout.  (Tr. 903-906.)  Lastly, Dr. de Leon provided a diagnosis/assessment of chronic back pain with lumbar radiculopathy, a medical source statement including his clinical findings, and his plan/recommendations.  (*Id.* at 906.)  Dr. de Leon's clinical findings were:

> **-Abilities**: Patient is able to [sic] examination room, sit for the duration of [her] visit, get out of [the] chair & walk out unassisted with [a] standard cane.
> **-Limitations**: Patient is unable to walk on toes & heels without difficulty, squat fully & get back up unassisted.

(*Id.*)

### E.    Analysis

Upon review, the Court finds that the ALJ fulfilled his duty to develop a full and fair record.  Plaintiff essentially argues that the law requires that, for an ALJ to fully develop the record, he must base his RFC determination on a physician's opinion.  This Court finds that the ALJ has no such duty.  Indeed, the ALJ has a basic duty to develop a full and fair record.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir.2003).  "However, such a duty to develop the record does not require an ALJ to obtain a medical source opinion

regarding the claimant's RFC assessment." *Jones v. Colvin*, No. 2:12-CV-3605-KOB, 2014 WL 1046003, at *11 (N.D. Ala. Mar. 14, 2014).

An RFC assessment involves determining the claimant's ability to do work despite her impairments and in consideration of all relevant evidence. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997); *see also* 20 C.F.R. § 416.945(a).  In the present case, the ALJ properly based his RFC determination, that Plaintiff could perform light work with additional limitations, on all of the relevant evidence in the record, including Plaintiff's statements and testimony of what she can do and all of the objective medical evidence.  The law does not require the ALJ to obtain a separate medical opinion from a physician upon which to base his RFC determination.

Plaintiff specifically argues against the ALJ's RFC determination where it concerns the limitation of avoiding concentrated exposure to pulmonary irritants, arguing that "it is unclear whether this limitation was sufficient, as no medical opinion of record opined limitations [regarding] this issue."[8]  (Doc. 31 at 8.)  Plaintiff is correct that no medical opinion explicitly spoke to limitations resulting from her atrial fibrillation and chronic obstructive pulmonary disease.  However, there were sufficient findings in

---

[8] At the hearing, Plaintiff's counsel proposed a third hypothetical question to the VE that included the same occasional exposure to pulmonary irritants that the ALJ proscribed.  (Tr. 75.)

12

the record that amounted to substantial evidence supporting the ALJ's RFC determination. For example, in January 2018, Plaintiff presented to St. Vincent's Medical Center with complaints of chest pain, but her chest X-rays revealed normal cardio mediastinal silhouette, well-inflated and clear lungs, no pneumothorax or effusion, and no acute osseous abnormalities. (Tr. 510-11.) Several months later, in August 2018, Plaintiff presented to Palms Medical Group with complaints of hypertension and atrial fibrillation. (Tr. 565.) Upon examination, Plaintiff's blood pressure was 138/82 and her respiratory exam was normal. (Tr. 566.) By March 2019, Plaintiff returned to Palms Medical Group with complaints of hypertension and cold symptoms. (Tr. 563.) Upon arrival, Plaintiff's blood pressure read 155/83, but within an hour, her blood pressure had stabilized to 124/70. (Tr. 562.) Plaintiff denied experiencing chest pain, claudication, and irregular heartbeat, and her respiratory and cardiovascular exams were normal.[9] (*Id.*)

Furthermore, rather than pointing to medical evidence that conflicts with the ALJ's RFC determination, Plaintiff argues that recontacting her treating sources would somehow reveal a more accurate and restrictive

---

[9] While Plaintiff argues that the ALJ's RFC determination as a whole is inaccurate, Plaintiff explicitly calls into question the portion relative to her avoiding concentrated exposure to pulmonary irritants. Thus, the Court discusses the medical records relevant to Plaintiff's atrial fibrillation and chronic obstructive pulmonary disease.

13

account of her limitations.  "In evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir.1995) (per curiam) (quotations omitted). The likelihood of unfair prejudice may arise if there is an evidentiary gap that "the claimant contends supports her allegations of disability." *Id.* at 936 n. 9.  Here, no such prejudice exists, as the ALJ clearly considered Plaintiff's medical records in his assessment, including the available medical evidence before and during the relevant period.  (*See* Tr. 30-35.)  The ALJ noted that Plaintiff's respiratory and musculoskeletal exams were "mostly unremarkable."  (Tr. 32.)  Additionally, the ALJ found that "[b]y March 25, 2019, the [Plaintiff] denied respiratory symptoms of dyspnea and chest pain and [her] exam was largely unremarkable."  (Tr. 35.)

As to Plaintiff's alternative argument, that the ALJ failed to recontact Dr. de Leon for a clarified opinion, the Court disagrees and finds that the ALJ had no duty to recontact Dr. de Leon.  20 C.F.R. § 416.920b imposes no duty on the ALJ to recontact medical sources, but gives him/her the discretion to recontact a "treating physician, physiologist, or other medical source."  20 C.F.R. § 416.920b(b)(2)(i).  Indeed, Plaintiff appreciates the ALJ's discretion with respect to recontacting Dr. de Leon, but argues that Dr. de Leon's "limitations were too vaguely defined to guide the ALJ's RFC

14

determination." (Doc. 31 at 10.) After thoroughly reviewing Dr. de Leon's report, the Court agrees with Plaintiff in part that his ultimate findings at the end of the report were vague. As there are some obvious typographic errors, it is unclear whether Dr. de Leon intended to note that Plaintiff was able to walk into the examination room. Likewise, it is unclear whether Dr. de Leon intended to note that Plaintiff got out of her chair unassisted or whether she used her cane for assistance.

Notwithstanding the ambiguous notations, the ALJ had substantial evidence in the record to form the basis for his decision and was not required to recontact Dr. de Leon. The ALJ considered Dr. de Leon's notations, included them in his decision, but provided an additional restriction from pulmonary irritants. (*See* Tr. 35 (discussing Dr. de Leon's notations of normal ranges of motion throughout spine, hip, and extremities, and Plaintiff's inability to perform heel-to-toe walking and squatting).)

Additionally, Plaintiff further asserts that "[e]ven without recontacting Dr. Leon [sic] for clarification on his opinion, the ALJ committed error by not evaluating the opinion in accordance with the Regulations" because he did not assign any persuasive weight to the opinion. (Doc. 31 at 10-11.) Defendant responds that Dr. de Leon's findings were merely Plaintiff's subjective reports and not a medical opinion. (Doc. 32 at 11.) The revised regulation, 20 C.F.R. 416.913(a)(2), defines a "medical opinion" as:

15

> A statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section.[10]
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.923(a)(2).

Upon consideration, Dr. de Leon's consultative clinical findings fall outside the amended regulations' definition of "medical opinions" and did not require the ALJ's assignment of weight. The present case is analogous to another case in this District. In *Corns v. Commissioner of Social Security*, No. 8:20-CV-2605-VMC-SPF, 2022 WL 2975102 (M.D. Fla. June 30, 2022), the court ruled that the findings Plaintiff relied upon were not "opinions" as defined in the amended regulations. *Corns v. Comm'r of Soc. Sec.*, at

---

[10] C.F.R § 416.913(a)(2)(i)(A) through (D) refer to medical opinions in adult claims while C.F.R. § 416.913(a)(2)(ii)(A) through (F) refer to medical opinions in child claims.

16

\*4, report and recommendation adopted sub nom. *Corns v. Comm'r, Soc. Sec. Admin.*, No. 8:20-CV-2605-VMC-SPF, 2022 WL 2966855 (M.D. Fla. July 27, 2022). The plaintiff in *Corns* argued that findings by a Board Certified Advanced Registered Nurse Practitioner ("ARNP-BC") that he was currently treating with Fentanyl patches for his pain, used an orthotic insert and two crutches, was able to walk a quarter mile, and that his impairments caused significant effects on his usual occupation were medical opinions that the ALJ should have considered. *Id.*

Here, the evidence at issue is Dr. de Leon's clinical findings, which state that Plaintiff is able to sit for the duration of the visit, "get out of [the] chair [and] walk out unassisted with [a] standard cane", and she has difficulty walking on her toes and heels. (Tr. 906.) Similar to the evidence at issue in *Corns*, the notations and clinical findings provided by Dr. de Leon do not constitute "medical opinions" under the Social Security regulations because the bulk of his report consists of Plaintiff's subjective symptoms, medical history, physical examination, and the clinical findings based on the physical examination. (Tr. 901-906.) Accordingly, Plaintiff's argument that the ALJ failed to weigh Dr. de Leon's medical opinions is unpersuasive. *See Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) ("The [ALJ] was not required to state what weight he assigned to medical records that did not qualify as medical opinions. An [ALJ] is obligated to

17

assign a weight only to a statement that constitutes a medical opinion.").

### III.  Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 21, 2022.

>                         MONTE C. RICHARDSON
>                         UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record